**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

COMMUNITY CENTRAL BANK,

     Plaintiff,

v.                                    Case No.  11-10059

MORTGAGE NOW, INC.,

     Defendant.

                                    /

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Talmer Bank and Trust (TBT) contends that it acquired this action for breach of
contract and unjust enrichment.  It contends that the action's original plaintiff,
Community Central Bank (CCB), paid the defendant, Mortgage Now, Inc. (MNI), more
than $125,000 to finance a mortgage loan.  It contends that MNI wrongfully pocketed
CCB's money.  Moving for summary judgment, MNI challenges these three contentions.
The matter is fully briefed, and no hearing is needed.  *See* E.D. Mich. LR 7.1(f)(2).  To
prevail on its motion, MNI must show that no reasonable jury could find for TBT.
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

MNI issues mortgages and then sells them to investors.  On September 1, 2010,
MNI and CCB completed a "participation agreement" that permitted CCB to purchase a
98 percent "participation interest" in an MNI mortgage by financing 98 percent of the
pertinent mortgage loan.  (Dkt. # 61 at 10; Dkt. # 58, Ex. 5.)  The parties agree that, for
several of the mortgages financed by CCB under the agreement, MNI found an investor

and re-paid CCB, with interest, without incident.  MNI and CCB sought to arrange more than a mode of financing; they set themselves to merging MNI and a CCB subsidiary. James Marchese, head of MNI, says CCB's CEO, David Widlak, was ready to deliver a signed copy of the merger to Marchese on September 21, 2010.  (*Id.*, Ex. 2).  Shortly before the allegedly scheduled delivery, however, Widlak died mysteriously, perhaps by murder.  The record therefore shows merely that a deal was close—MNI submits only the unexecuted merger agreement, (Dkt. # 58, Ex. 4), and a list of "proposed" transactions among MNI, CCB, and the subsidiary, (*id.*, Ex. 3).  At any rate, although the merger will come up again, this action involves mainly a loan, the parties call it "the Presto loan" (in honor of the borrower, Nancy Presto), that CCB said it financed under the completed participation agreement.  CCB collapsed four months after suing MNI for the return of CCB's alleged interest in the Presto loan.  The FDIC inherited, as receiver, CCB's assets and liabilities, *see* 12 U.S.C. § 1821(d)(2), and sold many of them to TBT. (Dkt. # 58, Ex. 1).

    The first question is whether this action is among the assets that TBT purchased. Through its purchase agreement with the FDIC, TBT acquired "all right . . . to all the assets . . . of [CCB]," (*id.*, Ex. 1 sec. 3.1), except for, among other things, "any . . . action [or] claim against" a person "whose action or inaction may be related to any loss (exclusive of any loss resulting from [the] Person's failure to pay on a Loan made by [CCB]) incurred by [CCB]," (*id.*, Ex. 1 sec. 3.5).  MNI asserts belatedly, in its reply, based on no authority, that a chose in action is not an "asset."  Why should that be? *Black's Law Dictionary* defines "asset" as "an item that is owned and has value," *id.*, 134 (9th ed.), and a chose in action is thus an "asset" of an estate, *e.g.*, *Auday v. Wet Seal*

2

*Retail, Inc.*, 698 F.3d 902, 904-05 (6th Cir. 2012); 8A C.J.S. *Bankruptcy* § 559 (2013). Without an argument from MNI, no reason appears to assume that this action is not part of TBT's purchase of "all the assets." There is, to be sure, the exception for an action "related to any loss . . . incurred by" CCB, but MNI never raises it and, in any event, it looks inapplicable. The exception does not apply to a loss arising from a defendant's "failure to pay on a Loan," and the purchase agreement counts a participation interest, and almost any other form of credit, as a "Loan." (Dkt. # 58, Ex. 1 sec.1.3). The purchase agreement therefore empowers TBT to sue for the money that purchased (or that CCB reasonably thought would purchase) a participation interest in the Presto loan.

According to MNI, the Presto loan was neither financed by CCB nor governed by MNI and CCB's participation agreement. But MNI never denies that it holds more than $125,000 that CCB expected would pay for *something*. If MNI holds money that CCB released by mistake, or in confusion, then the Presto loan and the participation agreement are a distraction, and "the gist of . . . [the] action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money." *Moses v. Macferlan*, 97 Eng.Rep. 676, 682 (K.B. 1760) (Mansfield, C.J.); *Mich. Educ. Emps. Mut. Ins. Co. v. Morris*, 596 N.W.2d 142, 151 (Mich. 1999); *Restatement (Third) of Restitution & Unjust Enrichment* § 6 cmt. b (2011). There are signs of a mistake. When CCB's attorney pressed him about the Presto loan, Marchese, the MNI CEO, sent this chaotic reply:

> . . . . It is important to clarify a few facts that you are mistaken. The Presto loan was properly funded by [another] bank, *not* Community Central Bank. The note was properly handled by [the other] bank and the end investor properly purchased the loan. The loan needed to be processed this way because Community Central Bank could not be on both sides of the

3

transaction. Your client is fully aware of that fact. The date of funding of the loan was September 13, 2010. Community Central bank did receive the pay-off from the title company. Hence, the loan was properly funded and paid-off in the transaction dated September 13, 2010. For further clarification, the Community Central note was never released to Mortgage NOW, Inc. The note was closed in MortgageNOW, Inc's name and sent it properly to [the other bank] were the funds originated. The funds satisfied our warehouse line properly, we did not redirect an investor. . . .

MortgageNOW, Inc was unaware that Community Central Bank funded this loan to the title company. Upon notice of Community Central Bank's error the title company contacted Community Central Bank, but to no avail. As you are aware; Mr. Widlak's death greatly disrupted Community Central Bank's business. Community Central Bank's refused to return phone calls to MortgageNOW, Inc. and the title company in question. The title company called and received verification from Community Central Bank's servicing department that the Presto loan was satisfied! The title company, after receiving confirmation the loan was satisfied, returned funds to MortgageNOW, Inc. as it was the only lien holder. . . .

. . . . It was the Bank's error to fund the loan, omit it from our documents and to tell the title company the loan was satisfied. . . .

(Dkt. # 61, Ex. L) (emphasis and errors in original).  Marchese appears to say that CCB paid money to a title company by mistake, that the title company eventually passed the money to MNI, that CCB forfeited the money by failing to claim it promptly, and that MNI may therefore keep the money.  At least, a reasonable jury, aided by a CCB witness, could read Marchese's words this way.  A reasonable jury, repelled by Marchese's abrasive logic, could find MNI unjustly enriched.

There are also signs that CCB paid for the Presto loan in accord with the participation agreement.  The record contains an email in which CCB asked when the Presto loan would "be funded."  MNI responded that "investors" were "process[ing] the conditions."  (Dkt. # 61, Exs. D-H).  TBT says CCB had financed the Presto loan and wanted to know when MNI would pass the loan to an investor and re-pay CCB.  The

4

emails, although rebuttable, align neatly with TBT's claim.  The participation agreement stated that CCB and MNI would create a "participation certificate" for each loan financed by CCB, (Dkt. # 58, Ex. 5 sec. 2), the record lacks a certificate for the Presto loan, and, in MNI's view, this means the Presto loan is not governed by the participation agreement.  But the agreement does not say that the absence of a certificate voids CCB's interest in a loan.  To the contrary, the agreement governs "any" participation interest CCB purchased from MNI.  (*Id.* Ex. 5 sec. 6).  Assuming, then, as a reasonable jury could, that CCB purchased a 98 percent interest in the Presto loan, MNI, by withholding the benefits of that interest, breached the participation agreement.  (*See* Dkt. # 58, Ex. 5, secs. 6, 13, 16).

MNI says it paid CCB millions of dollars for the merger with the CCB subsidiary. It wants TBT, CCB's prime successor, to pay those millions as a setoff, and, accordingly, it tries to force TBT to accept the apparently unexecuted merger agreement.  It raises two arguments, both of which fail.  First, MNI argues that the participation agreement incorporates the merger agreement.  Nothing in the participation agreement supports this argument; in fact, the participation agreement includes an "Entire Agreement" clause that limits the contract to its terms.  (Dkt. # 58, Ex. 5 sec. 26).  Alternatively, MNI argues that the merger agreement must operate because, without its conditions, MNI received no consideration for the participation agreement.  Under the participation agreement, however, CCB capitalized mortgages in which MNI retained an interest.  Financing easily qualifies as consideration.  *See Rose v. Lurvey*, 198 N.W.2d 839, 841-42 (Mich. Ct. App. 1972); 17 C.J.S. *Contracts* § 160 (2013.  MNI—which, unlike TBT, seeks damages only under a contract—has not

5

established its right to a setoff.  In any case, the record contains no ready and proven

calculation of how much either party might owe the other; so even if MNI can claim a

setoff, ending TBT's action on that basis now would rob TBT of the chance to prove its

damages.  *See Coffie v. United States*, 43 F.App'x 808, 809, 813 (6th Cir. 2002).  (TBT

argues that a setoff is barred as a matter of law.  Because MNI's motion for summary

judgment already fails, the argument requires no attention here.)

     MNI complains that TBT never moved to substitute itself for CCB.  The action,

however, passed seamlessly from CCB to the FDIC to TBT.  A substitution is

unnecessary.  *See* Fed. R. Civ. P. 25(c); 7C C. Wright & A. Miller, *Federal Practice &*

*Procedure Civ.* § 1958 (3d ed.); *see also* 6 Am. Jur. 2d *Assignments* § 45 (2013).

Accordingly,

     IT IS ORDERED that the motion for summary judgment [Dkt. # 58] is DENIED.


         s/Robert H. Cleland
         ROBERT H. CLELAND
         UNITED STATES DISTRICT JUDGE

Dated:  March 28, 2013


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, March 28, 2013, by electronic and/or ordinary mail.

         s/Lisa Wagner
         Case Manager and Deputy Clerk
         (313) 234-5522