**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

COMMUNITY CENTRAL BANK,

    Plaintiff,

v.                                                    Case No. 11-10059

MORTGAGE NOW, INC.,

    Defendant.

                                                 /

**FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO RULE 52(a)**

After denying Mortgage Now, Inc.'s ("MNI") motion for summary judgment and granting Community Central Bank's ("CCB")[1] motion *in limine* to strike MNI's set-off defense, the court held a bench trial on October 8 and 24, 2013. At trial, CCB withdrew its breach of contract claim and proceeded solely on its unjust enrichment claim. (Pg. ID # 2033–36.) Pursuant to Federal Rule of Civil Procedure 52(a), the court presents its findings of fact and conclusions of law. For the reasons that follow, the court finds in favor of CCB. A separate judgment will be entered.

**I. FINDINGS OF FACT**

On September 1, 2010, CCB and MNI entered into a Loan Participation Agreement ("Participation Agreement") and Loan Administration Agreement ("Administration Agreement"). The agreements gave CCB the option to purchase participation interests in mortgage loans that MNI was re-financing. Under the

---

[1] Through a purchase agreement with the Federal Deposit Insurance Corporation, Talmer Bank and Trust acquired this action from named Plaintiff CCB. The court refers to Plaintiff as CCB to avoid confusion of the issues.

agreements, CCB would pay 98% of the amount for each re-financed loan, and MNI would fund the remaining 2%. The loans would later be resold, and CCB would earn fees from the resale of the loans. Nineteen loans were successfully funded under the Participation Agreement, and on September 17, 2010, CCB wired $126,209.40 to Esquire Title Insurance Company to fund a 98% participation interest in a twentieth loan, known to the parties as the "Presto Loan," in reference to the borrower, Nancy Presto.

Despite the fact that the title agent accepted the funds, the Presto Loan remained unfunded. CCB inquired multiple times about the status of the Presto Loan, and Mike Perry, MNI's Senior Vice President, reassured CCB that MNI was working to "clear conditions" on the Loan. Despite these reassurances, another bank, Citizens Bank ("Citizens") ultimately funded the Presto Loan. On September 23, 2010, the title agency refunded CCB's $126,209.40 wire to MNI, noting that the refund was a return of funds for the Presto wire, and that it had received two Presto wires by mistake, with the wire from Citizens being the correct funding source for the Loan. MNI neither informed CCB of this error, nor returned the money to CCB.

However, a draft HUD-1 statement executed on September 11, 2010, shows CCB as the source of funds for the Presto Loan, with $130,598 listed as the total amount of the loan. Citizens ultimately paid $127,986.84 for the Presto Loan, 98% of the $130,598 listed in the HUD-1 statement. (Ex. 501, Pg. ID# 2125.) The discrepancy between the amount Citizens paid for the Presto Loan and the amount CCB attempted to pay is explained by two payoff letters CCB issued on September 3, 2010, after Presto made a monthly payment. In these letters, CCB states that the total payoff amount for

the Presto Loan is $129,186.06—98% of this amount is $126,602.34, $392.94 more than CCB wired to the title agency. (Ex. 505, Pg. ID# 2167–68.)

At trial, James Marchese, MNI's President and Chief Executive Officer, testified that the payoff amount for the Presto Loan would have been "well in excess of $136,000," a claim contradicted by the price that Citizens paid for the Loan. He also testified that the amount CCB wired to the title agency was intended as payment for other debt that CCB owed MNI, and that CCB fabricated its claim that the wire was intended to pay for a participation interest in the Presto Loan. In the face of contradictory documents, the court does not find Marchese's testimony credible.

### III. CONCLUSIONS OF LAW

Because the court has jurisdiction of this case by virtue of diversity of citizenship between the parties, it applies Michigan law. *Stalbosky v. Belew*, 205 F.3d 890, 893 (6th Cir. 2000). In order to prove a claim for unjust enrichment, CCB must show that (1) MNI received benefits from CCB, and (2) an inequity to CCB resulted because of the retention of these benefits. *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991). "The misconduct which will move a court of equity to deny relief must bear a more or less *direct relation to the transaction* concerning which complaint is made." *McFerren v. B & B Inv. Group*, 655 N.W.2d 779, 784 (Mich. Ct. App. 2002) (quotation marks and citation omitted) (emphasis added).

The court finds that CCB's $126,209.40 wire to MNI was connected to the Presto Loan, and the parties would have reasonably understood it to be a payment for a participation interest in the Presto Loan. MNI's claim that it was otherwise entitled to the money fails as the court previously ruled that such a set-off claim was jurisdictionally

3

barred. (Pg. ID# 1843–45.) Further, the amount CCB wired as payment for a participation interest in the Presto Loan is too close to the actual amount required for the Presto Loan (a difference of $392.94) to be a mere coincidence concocted by CCB after the fact in order to obtain recovery of funds owed to MNI. MNI has offered no other explanation for why it is entitled to CCB's funds, and the court finds that retention of these funds would result in an inequity to CCB. Accordingly, the court finds that CCB is entitled to $126,209.40.

CCB also requests attorneys' fees. Under Michigan law, "attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides [to] the contrary." *Nemeth v. Abonmarche Dev., Inc.*, 576 N.W.2d 641, 651 (Mich. 1998) (emphasis omitted). "[I]t is improper to award attorney fees on general equitable principles." *Bank One v. Adams* (*In re Estate of Adams*), 667 N.W.2d 904, 908 (Mich. Ct. App. 2003). CCB has not identified, nor has the court been able to find, any statute, court rule, or common-law exception allowing the award of attorneys' fees for unjust enrichment claims.[2] Although Michigan law permits discretion to award attorneys' fees

---

[2]In *Hall v. Cole*, 412 U.S. 1 (1973), the Supreme Court stated:

> Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require. Indeed, the power to award such fees is part of the original authority of the chancellor to do equity in a particular situation, and federal courts do not hesitate to exercise this inherent equitable power whenever overriding considerations indicate the need for such a recovery.

*Id.* at 4–5 (internal citations and quotation marks omitted). Unlike *Hall*, the present action is before the court based on diversity, rather than subject matter, jurisdiction. The court therefore must apply Michigan law, which disfavors the award of attorneys'

4

to a prevailing party following a frivolous lawsuit, the court does not find that MNI's defense was asserted with the "primary purpose" to "harass, embarrass, or injure" CCB, that MNI's defense was "devoid of arguable legal merit," or that MNI "had no reasonable basis to believe the facts underlying [its] legal position were in fact true." Mich. Comp. Laws § 600.2591(1), (3)(i)–(iii). CCB's request for attorneys' fees is denied.

## IV. CONCLUSION

For the foregoing reasons, the court finds that CCB's $126,209.40 wire to MNI in connection with the Presto Loan unjustly enriched MNI. Accordingly,

IT IS ORDERED that CCB is entitled to $126,209.40. A separate judgment will issue.

IT IS FURTHER ORDERED that CCB's request for attorneys' fees is DENIED.

  s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: November 22, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 22, 2013, by electronic and/or ordinary mail.

  s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

---

fees based on the general equitable principles identified in *Hall*.